| | |
|---|---|
| **DISTRICT COURT, CITY AND COUNTY OF DENVER, STATE OF COLORADO**<br>1437 Bannock Street<br>Denver, CO 80202<br>(720) 865-8301 | DATE FILED: February 13, 2017 3:16 PM<br>FILING ID: 140DA1206982B<br>CASE NUMBER: 2017CV30577 |
| **Plaintiff:**  Gary Nelson<br><br>v.<br><br>**Defendants:**  CIGNA Corporation, d/b/a CIGNA Group Insurance, a Delaware corporation; and Life Insurance Company of North America, a Pennsylvania corporation. | ▲ **COURT USE ONLY** ▲ |
| *Attorneys for Plaintiff:*<br>Bradley A. Levin, Atty. No. 13095<br>Kevin P. Ahearn, Atty. No. 31051<br>**LEVIN SITCOFF PC**<br>1512 Larimer Street, Suite 650<br>Denver, Colorado 80202<br>Phone Number: 303-575-9390<br>Fax Number: 303-575-9385<br>bal@levinsitcoff.com<br>kpa@levinsitcoff.com | Case Number:<br><br>Ctrm.: |
| **COMPLAINT AND JURY DEMAND** ||

Plaintiff, Gary Nelson, by and through counsel, LEVIN SITCOFF PC, for his Complaint and Jury Demand, states and alleges as follows:

### PARTIES, JURISDICTION, AND VENUE

1. Plaintiff Gary Nelson ("Plaintiff" or "Mr. Nelson") is, and at all times relevant to this action was, a resident of the State of Colorado.

2. Defendant CIGNA Group Insurance, on information and belief, is a registered service mark and refers to an operating subsidiary of CIGNA Corporation, a Delaware Corporation with its principal place of business in Pennsylvania. On information and belief, CIGNA Group Insurance is authorized to conduct business in Colorado.

3. Defendant Life Insurance Company of North America ("LINA"), on information and belief, is a Pennsylvania corporation with its principal place of business in Pennsylvania, and is an operating subsidiary of CIGNA Corporation. On information and belief, LINA is authorized to conduct business in Colorado.

**EXHIBIT A**

4.      CIGNA Group Insurance and LINA are collectively referred to herein as CIGNA.

5.      This Court has personal jurisdiction over CIGNA pursuant to the Colorado long-arm statute, C.R.S. § 13-1-124(a) and (b).

6.      This Court has subject matter jurisdiction over all claims asserted herein pursuant to 29 U.S.C. § 1132(e)(1).

7.      Venue is proper in this district pursuant to C.R.C.P. 98(c), which Plaintiff designates as the place of trial of this action.

## GENERAL ALLEGATIONS

### A.     Ms. Nelson's Medical Condition and Functional Limitations

8.      Since childhood, Mr. Nelson has been diagnosed with congenital bronchiectasis, a severe chronic condition of the lungs. As a child, Mr. Nelson also had the lower left lobe of his lung removed.

9.      Mr. Nelson's severe chronic lung condition has worsened significantly over time. Mr. Nelson now has advanced, end-stage cystic bronchiectasis, resulting from alpha one antitrypsin deficiency and Mournier-Kuhn syndrome. Mr. Nelson has also been diagnosed with pulmonary arterial hypertension, emphysema, chronic aspiration pneumonitis, secondary pulmonary hypertension, chronic rhinosinusitis, gastroesophageal reflux disease, obstructive sleep apnea, and dependence on high-risk medications such as prednisone.

10.     As a result of Mr. Nelson's severe chronic lung condition, his lungs cannot clear mucus as they normally would. This leads to infections, inflammation and scarring in the lungs, makes it difficult for Mr. Nelson to breathe, generates a productive cough, and causes weakness and fatigue, wheezing, loss of appetite, clubbing of the fingers, shortness of breath, and chest pain.

11.     Because of Mr. Nelson's severe chronic lung condition, he is routinely and constantly sick. For example, Mr. Nelson is colonized with three different types of pneumonias, and he contracts pneumonia multiple times per month. Given how often he is sick, Mr. Nelson attends multiple doctor appointments per month, and is routinely admitted to the hospital for care, often-times requiring a one- to two-week admission. Mr. Nelson typically requires a two-week dosage of near-continuous antibiotics when he gets sick.

12.     With his colonized pneumonias, when Mr. Nelson gets sick his symptoms include fever, chills, malaise, hypoxia, edema, >20 productive coughs per day, increased oxygen demands, and fatigue. Mr. Nelson is required to take high doses of prednisone, along with the antibiotics, which make Mr. Nelson very tired.

13.     Due to Mr. Nelson's chronic lung condition, he must also endure a daily respiratory therapy regimen, as prescribed by his health care providers. Four times per day, every day, Mr.

2

Nelson undergoes respiratory therapy to shake and remove mucus from his lungs, to relax the airways and keep them open, and to assist with dyspnea and breathing. Mr. Nelson cannot clear the mucus in his lungs without this four-times per day therapy. The treatment consists of taking two to five nebulized bronchodilators, mucolytics, and maintenance medicines, along with vest therapy. The vest therapy involves a vest that operates mechanically to beat on Mr. Nelson's torso and back, and is particularly fatiguing for Mr. Nelson. Mr. Nelson becomes exhausted after each such therapy session.

14. Each episode of Mr. Nelson's respiratory therapy lasts 1 to 2 hours, encompassing 4 to 8 hours of the time he is awake, each day. Given the mechanical equipment utilized, the respiratory therapy must be performed at home, or at a hospital.

15. In 2012, Mr. Nelson's chronic lung conditions deteriorated significantly, and he became sick more often. Mr. Nelson worked through November 9, 2012, at which time Mr. Nelson's severe chronic lung condition interfered with his ability to work in any capacity. Because Mr. Nelson's severe chronic lung condition renders him sick multiple days per month, it interferes with his ability to reliably attend work. Mr. Nelson is also routinely admitted to the hospital when he gets sick, with the admissions often lasting one to two weeks, again interfering with Mr. Nelson's ability to reliably attend work.

16. Mr. Nelson's chronic lung disease also interferes with his ability to work because during the hours he is awake, Mr. Nelson spends 4 to 8 hours each day performing respiratory therapy at his home or at the hospital. This respiratory therapy takes away from the time Mr. Nelson would otherwise be working, and he cannot reliably attend work.

17. Because Mr. Nelson has a rare and severe chronic lung condition, because he is consistently sick, at doctor appointments, and admitted to the hospital, and because Mr. Nelson spends 4 to 8 hours per day performing respiratory therapy, he cannot reliably attend work. Mr. Nelson cannot maintain employment on a regular and consistent basis, and his routine absence from work due to his sickness is not something any employer would tolerate. Due to this constellation of factors, Mr. Nelson is unable to work on a regular basis, and consequently is totally disabled.

18. Mr. Nelson's treating physicians agree that he is disabled. By way of just one example, Kenneth Lyn-Kew, M.D., a pulmonologist at National Jewish Health in Denver, Colorado, has written that Mr. Nelson is "limited in his daily activities and is unable to work on a sustained basis due to the time needed to execute airway clearance techniques necessary for the long term management of his disease" and that Mr. Nelson "is unable to resume working on a sustained basis due to physical impairment" for which there is no cure. Other physicians who have treated Mr. Nelson, including but not limited to John Newcomer, M.D., Robert Tanabe, M.D., and James Good, M.D., all agree Mr. Nelson is disabled.

### B.   Mr. Nelson's Claim History and The CIGNA Policy

19. Beginning in August 2008, Mr. Nelson became employed as a Systems Engineer for TASC, Inc.

3

20.     Mr. Nelson is insured under a long-term disability policy, Plan/Policy No. FLK0960477, issued to TASC, Inc. by CIGNA and underwritten by LINA (the "Policy").

21.     The Policy provides, in part, that an insured is disabled and eligible for long-term disability benefits when "solely because of Injury or Sickness, he or she is: 1) unable to perform the material duties of his or her Regular Occupation; and 2) unable to earn 80% or more of his or her Indexed Earnings from working in his or her regular Occupation." The Policy further provides after receiving 24 months of disability benefits, "the Employee is considered Disabled if, solely due to Injury or Sickness, he or she is: 1) unable to perform the material duties of any occupation for which he or she is, or may reasonably become, qualified based on education, training, or experience, and 2) unable to earn 60% or more of his or her Indexed Earnings"

22.     As set forth above, Mr. Nelson's medical condition deteriorated significantly in 2012. Due to his deteriorating medical condition, and because he was unable to maintain regular employment given his serious and rare medical condition, Mr. Nelson was unable to continue working effective November 9, 2012.

23.     Subsequent to November 9, 2012, Mr. Nelson applied for short-term disability benefits. CIGNA approved Mr. Nelson's claim for short-term disability benefits, and paid those benefits through May 8, 2013.

24.     Mr. Nelson was unable to return to work as a result of his severe chronic lung disease, and the sequela of that disease. Thus, Mr. Nelson applied for long-term disability benefits under the CIGNA Policy. CIGNA approved Mr. Nelson's claim for long-term disability benefits and began paying those benefits effective May 9, 2013.

25.     Effective May 8, 2015, CIGNA terminated Mr. Nelson's claim, asserting that Mr. Nelson "could return to work in a sedentary capacity."

## C.     Mr. Nelson's Appeal

26.     Mr. Nelson appealed CIGNA's termination of long-term disability benefits on January 14, 2016, in a 157-page appeal letter. With his appeal, Mr. Nelson provided voluminous medical documentation (over 2,400 pages of records) documenting his significant medical history and hospital admissions just for the previous three years, supporting the conclusion that his severe chronic lung condition renders him unable to work in any capacity. Mr. Nelson also provided, *inter alia*, an affidavit and a letter from a former work colleague highlighting his medical problems, a letter from a treating doctor stating that Mr. Nelson is unable to work, and a report from a vocational expert indicating that Mr. Nelson is not employable since he cannot regularly attend work.

27.     CIGNA denied Mr. Nelson's appeal on July 15, 2016, stating, "In summary, a review of the medical information on file did not reveal any significant clinical findings of a functional loss, to support a restriction of no work."

28. CIGNA's termination of benefits was incorrect, unreasonable, and arbitrary and capricious.

29. Mr. Nelson has satisfied all conditions precedent to coverage, or any such conditions are waived or excused by CIGNA's conduct.

## CLAIM FOR RELIEF
### (Violation of 29 U.S.C. § 1132(a)(1)(B))

30. Mr. Nelson incorporates by reference paragraphs 1-29 of this Complaint as if fully set forth herein.

31. Mr. Nelson brings this claim under 29 U.S.C. § 1132(a)(1)(B).

32. CIGNA's termination of LTD benefits was incorrect, unreasonable, arbitrary, and capricious as it was not based upon a correct application of the Policy language nor supported by the substantial weight of the evidence in the administrative record.

33. CIGNA failed to provide a full and fair review of Mr. Nelson's claim for disability benefits.

34. CIGNA's handling of Mr. Nelson's claim for disability benefits was attended by serious procedural irregularities.

35. CIGNA conducted a wholly inadequate investigation into Mr. Nelson's medical condition, including without limitation the impact of Mr. Nelson's serious and rare chronic lung disease on his ability to work, prior to terminating his claim for disability benefits.

36. CIGNA ignored readily available information that confirmed Mr. Nelson's entitlement to disability benefits.

37. CIGNA was operating under an inherent conflict of interest in adjusting Mr. Nelson's claim for disability benefits as both payor and administrator of the claim.

38. Pursuant to 29 U.S.C. § 1132(a)(1)(B), Mr. Nelson is entitled to recover disability benefits due under the terms of the Policy.

39. Pursuant to 29 U.S.C. § 1132(g), Mr. Nelson is also entitled to an award of reasonable attorney's fees and costs incurred in bringing this action.

40. Pursuant to C.R.S. § 10-3-1116, CIGNA's denial of disability benefits is subject to *de novo* review by the Court.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, Gary Nelson, respectfully prays for judgment in his favor and against Defendants as follows:

   a. For recovery of all disability benefits, past, present and future, due under the terms of the Policy;

   b. For all pre-and post-judgment interest, statutory and moratory damages, as allowed by law;

   c. For reasonable attorney's fees and costs of suit herein as provided by statute; and

   d. For such other and further relief as the Court deems just and proper.

**PLAINTIFF REQUESTS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

   **DATED** this 13th day of February, 2017

Respectfully submitted,

**LEVIN SITCOFF PC**

*s/ Kevin P. Ahearn*
Bradley A. Levin
Kevin P. Ahearn

*Attorneys for Plaintiff Gary Nelson*

**Plaintiff's Address:**
13838 Paradise Villas Grove
Colorado Springs, CO  80921